I may be getting this wrong, but Mr. Alagna? Yes. Thanks, Judge Gregory. And thank you. Good morning. May it please the Court. Steve Alagna on behalf of Appellant Johnny Simmons. And it's my honor to introduce the law students appearing under this Court's Rule 46A. So with me at counsel's table are Jack Whitney, Ashvanika Dodwani, and Jacob Cogdill. And Mr. Cogdill will be presenting the argument this morning. Thank you. Well, you're going to let us know. I think we know. But what school are you from? Washington University. That's right. Our friends from St. Louis are here. All right. Mr. Cogdill, you may proceed. May it please the Court. The District Court in this case applied Rule 56 backwards, accepting the account of the movement defendants and drawing inferences in their favor to grant summary judgment. This Court should vacate that decision for two reasons. First, the District Court improperly resolved genuinely disputed material facts when it concluded no choking occurred. Mr. Simmons testified that M.J. O. Whitaker choked him progressively harder and harder until he lost consciousness, while Sgt. Brown and Officer Hull stood by and watched without intervening. And far from clearly or blatantly contradicting Mr. Simmons' testimony, the video of the incident supports his account. Second, because the District Court misapplied Rule 56, it failed to engage with the rest of Mr. Simmons' bystander liability claims. But Mr. Simmons adduced evidence that showed genuine disputes of material fact going to each element of his bystander liability claims against the defendants. We therefore respectfully ask this Court to vacate the District Court's summary judgment order, because the proper inquiry was not whose account the District Court found most credible, but rather whether a reasonable jury could find for the non-movement Mr. Simmons given his account of the facts. At the heart of the District Court's error was its factual finding that Mr. Simmons was not choked, despite his testimony directly to the contrary. At JA 62 and 63, and then again at JA 286, Mr. Simmons consistently and repeatedly testified that MJO Whitaker choked him progressively harder and harder until he lost consciousness. And while that direct testimony alone is enough to establish a genuine dispute of material fact, the record does not stop there. At JA 50 and 51, for example, Mr. Simmons' medical records from the incident show that his neck remained red and irritated, and he felt as if his Adam's apple had been crushed three days after the incident. Mr. Simmons testified that MJO Whitaker's chokehold was so forceful that when he lost consciousness, he soiled his pants, a fact which Sergeant Brown's own testimony supports, but that the District Court nevertheless resolved in favor of the defendants. All this is to say nothing of the video of the incident, which shows MJO Whitaker wrapping his right arm around Mr. Simmons' throat, taking him to the ground, and holding him in a chokehold for 48 seconds until his legs go limp and he had to be... Is your claim that the video shows that, or is your claim that the video is consistent with that? Certainly that it's consistent with Mr. Simmons' account. And that's all it has to be at this posture. This court has held in cases like Brooks v. Johnson, Dean v. Jones, Witt v. West Virginia State Police, that video evidence is treated the same as all other evidence at summary judgment unless it's blatantly or clearly contradicting the non-movement's account. That's not the sort of evidence that we have here today. In short, you would concede that the video does not confirm the choking, but it also doesn't dispute the choking. That's right, Your Honor. There's nothing in the video to suggest that Mr. Simmons' account that the choking occurred is unreliable or... No, but I guess what I think... The flip side is you're not arguing that the video is so clear that you have to get summary judgment for your client. The video does not irrefutably establish that he was choked either. That's right, Your Honor. Definitely. I only mean to emphasize that looking at the video and drawing inferences in favor of the non-movement, as we must at summary judgment, the video supports his account and could even establish the sort of genuine disputes of material fact that you would need on summary judgment. And so every step of the way, the district court disregarded the type of evidence, Mr. Simmons' direct testimony in the video, from which a reasonable jury could conclude that MJO Whittaker choked Mr. Simmons and made inferences in favor of the defendants. Can I ask you a question about Whittaker? Do I understand correctly that the first place that you challenged the district court's dismissal of... I mean, this is such a weird case because the actual choker was dismissed for failure to serve him, and I didn't see you challenge that until your reply brief. Am I wrong about that? You are wrong about that, that we did challenge the dismissal in the opening brief on the grounds that the district court abused its discretion for failing to properly serve and recognize the other circumstances, or excuse me, the district court abused its discretion for failing to send Mr. Simmons the proper show cause order for his service and the other unusual circumstances of this case. In our reply brief, after the other side noted that the show cause order was sent to the proper address, we emphasized more of those unusual circumstances and the fact that Mr. Simmons was a pro se litigant, an IFP litigant who is entitled to rely on the marshals to effect service, that he raised to the district court that MJO Whittaker was evading service at JA 96, and he still attempted to effect service. The district court didn't engage with any of those factors in the footnote of its order dismissing MJO Whittaker from the case, and the district court's failure to engage with those facts. Okay, so I pulled up your opening brief. My recollection is that you raised an argument in your opening brief about service that appears to be factually wrong, and the argument that's in your reply brief is nowhere in your opening brief. Explain to me why I'm wrong about that. I concede, Your Honor, that the show cause order was sent to the correct address, and we were wrong about that. We wanted to emphasize, especially in response to the other side's argument that MJO Whittaker is properly dismissed because there was no excessive force, we wanted to emphasize the unusual circumstances in Mr. Simmons' diligence, but ultimately the bystander liability claims are sufficient to proceed on their own grounds if Your Honor disagreed with me. And on those facts, or on the bystander liability claims, the district court stopped to fully analyze Mr. Simmons' claims because it concluded that there was no excessive force because no choking occurred. But on each element of the bystander liability claims, Mr. Simmons' testimony raised genuine disputes of material fact, which makes summary judgment inappropriate. Do you want to, I guess, a factual question, what do you want us to do about it? So, right, I agree with you, the district court says he loses at requirement one. Let's assume for the sake of argument that we agree with you the district court was wrong about that. Then there's the question of the other elements. I mean, it seems to me that in the normal course we would remand to the district court to consider those things. What do you think we should do here? Let's assume for the sake of argument we agree with you on the force issue. What do you think we should do with the remaining elements of the bystander liability claim? Ideally, Your Honor, you would recognize that there are genuine disputes of material fact going to each element of the bystander liability claims. This is de novo review that's fully briefed. And Mr. Simmons adduced evidence from which a reasonable juror could conclude that Sergeant Brown and Officer Hull had knowledge of the violation, that they had an opportunity to intervene, and that they failed to do so. That evidence would allow this court to hold that summary judgment was precluded on the bystander liability claims in total. If this court disagreed, it could certainly do as Your Honor suggested and remand solely on the misapplication of Rule 56. But I would take a step back and emphasize that looking at the factors from Kingsley v. Hendrickson, there are factual disputes going to each one of those factors. So Mr. Simmons, rather when we look at whether M. J. Whitaker tempered the force, Mr. Simmons testified that in fact M. J. Whitaker's chokehold got progressively harder and harder over the duration of the chokehold. Mr. Simmons' injuries were extensive as shown by the medical records at J. 50 and 51. There was no evidence from the affidavits that the officers felt that their personal safety was threatened and any threat to security certainly diminished by the time Mr. Simmons hit the ground, restrained by multiple officers and non-resistant. Those sorts of fact-bound inquiries about officer safety and security were the types of genuine disputes of material facts that this court looked at in Dean v. Jones and found precluded summary judgment. And I think this court could do the same thing in this case looking at the bystander elements and going from there. And while the officers say they had no knowledge of the choking in their affidavits, the evidence leads to the natural inference that the officers did know of the violation and did not do anything to stop it. At J. 65, Mr. Simmons testified that they all stood and watched as the choking occurred. At J. 63, he notes that after the choking occurred, Sergeant Brown asked M. J. Whitaker, what did you do that for? And the whole time the video shows Officer Hull standing just inches away from M. J. Whitaker and Mr. Simmons' face and Sergeant Brown actually goes from Mr. Simmons' feet around to tap M. J. Whitaker on the shoulder, those are all pieces of evidence from which a reasonable juror could conclude that the officers had knowledge that a violation was taking place and did nothing to stop it. And so I would just say that every step of the way the defendants fail to meet their burden. They have not and cannot establish genuine disputes of material fact because Mr. Simmons genuinely disputed every element of his bystander liability claims. If this court has no further questions, I would respectfully ask this court to vacate the district court's order and hold that genuine disputes of material fact going to each element of the bystander liability claims preclude summary judgment and yield the rest of my time for rebuttal. Thank you, Mr. Cogdell. Mr. Rosen? May it please the court, my name is Jeff Rosen with the firm of Pender and Coward on behalf of Sergeant Eric Brown and Officer Benjamin Hull. The appellant claims at the lower court erroneously dismissed the bystander liability claims against my client on summary judgment. My first point is that Mr. Simmons' response to Sergeant Brown and Officer Hull's summary judgment motion were fatally defective under Eastern District of Virginia Local Rule 56B since he failed to file a statement of disputed facts. He never did that. Did the district court rely on that basis? They did. I think they did. In his decision, the court mentioned that. Why did the court keep writing? I guess he wanted to cover all his bases. If the district court was going to insist on strict compliance with that rule, I guess I would say you didn't comply with that rule, you lose, but that's not what the district court said. It wrote a whole opinion. I agree, Your Honor, but I think that in and of itself was sufficient. So if you rely on that rule, then all the facts presented in the summary judgment are undisputed. And so on that basis alone, that is sufficient grounds to support the court's ruling. My second point is that the court properly granted summary judgment in favor of Sergeant Brown. Would you agree that the court used a wrong standard enamelized in this case? We think that while he called an Eighth Amendment standard, we believe that he used the factors in Kingsley and reached a correct decision. So let's all of this talk about a subjective standard, which is just not right. Well, I think that whoever the court or... Do you agree that there is no subjective element to this claim properly understood? Yes, I do agree with that. Do you agree the district court repeatedly talked about subjective mental states? Well, the court did, but the court also did cite the test used in Kingsley. I mean, in looking at the court's decision at JA 329 through 330, the court considered the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and the effort made to temper the severity of the forceful response. He also considered malice or ill will, which you would agree is a higher standard. I agree. They mentioned it. The court mentioned it. But I think he considered the factors which would go to an objective standard, nevertheless. So even if he used the wrong moniker, I still think that he reached the right conclusion. Okay, so let's move to this videotape that allegedly conclusively... I guess I will not hide the ball. I do not understand how this video unambiguously establishes there was no choking, and I do not understand how the district court reached that conclusion. Well, Judge... I've watched this video repeatedly. I don't know what in this video unambiguously establishes he wasn't choked. I've watched it many times as well, Judge. And, you know, I think the videotape, taken in connection with the other undisputed facts... Well, that's not how Scott v. Harris works. Scott v. Harris is a narrow exception to the rule that says we resolve on material facts in favor of the non-moving party, that says if it is blatantly... I think that's blatantly contradicted is the language. Scott is a narrow exception to the rule that when the plaintiff testifies X happened for summary judgment, we assume he's telling the truth, unless what he's saying is so thoroughly discredited by a video whose... There's language, right? ...so thoroughly discredited by a video whose veracity cannot reasonably question that no reasonable jury could possibly believe the plaintiff. And I just don't see how we are anywhere close to that. Well, in this case, in addition to the video, I'll address your question, Your Honor. The court at JA 331 supports the reason why he believes the videotape does not support that... These are all great reasons why a jury might find against the plaintiff. They're not reasons why you'd grant summary judgment against him. Well, he says there's no evidence of marks of any other portion of his neck, so he says it's only on one side, which... Right, these are reasons why a jury might conclude he's lying. I mean, and maybe he is. Well, I mean, I think all I can do is rely on the conclusions of the court, Your Honor. I think, looking at the video, I can't say conclusively that he was or was not choked, but... Wait, isn't that, wait, that seems like a really important statement. Isn't that just ballgame? If the video does not conclusively establish he wasn't choked, wasn't the district court wrong to grant summary judgment? No, no, I don't think so, because I think it is a factor of the videotape and the court's conclusion was... It's weighing of the evidence and deciding which evidence it believes? Is that what you were trying to avoid saying? No, I was not saying that, Judge. I was not saying that. I think the video speaks for itself. I mean, the video speaks for itself, and if this court believes that it presents an issue of fact, then I think we're going to go back to the district court. You know, in many of these cases, we don't have videotape, and in many of these cases, we do. This does present a difficult situation for jailers in responding to inmates who will not follow orders and are acting up in the court. So, I mean, I think we have the videotape as it is. The court saw it and called it like he saw it, and I think that's where we're at. So I do believe that under the case law that the court made a reasonable conclusion. This is a bystander liability case, so not only is it the issue of whether there was a constitutional violation, the other issue is whether, as outlined in the Randall v. Prince George's County case, an officer can be liable under 1983 for bystander liability if he knows that a fellow officer is violating an individual's constitutional rights. What evidence is there of that? What about Officer Brown during this exchange going over and tapping Whitaker? It appears as if he's telling him to stop. I don't know why the sergeant was tapping him. That's one interpretation, Judge. But that would be a genuine issue of fact, right? Well, that would be. That could be. But on the other hand, we have Officer Hull on the right side. They're trying to take and subdue an inmate who is flailing and refusing to go back to his cell. So they're not bystanders. They're not sitting watching impassionately or on the sidelines. They're trying to get the inmate under control. So they are actively involved with a resisting inmate who won't follow their instruction. Do you agree that the video shows that there's a time where he's not moving at all and is still on top of him? Granted, you can't confirm that he was choked. Isn't there a time where he's not moving at all? There is a time. Wouldn't that be consistent with losing consciousness by loss of oxygen? That would be one potent possibility. That would be the main possibility if, in fact, you're choked. Well, that is one possibility. He could have also just stopped moving. He could have decided to comply. Agreed, right, isn't it? But that's a fact question for a jury, right? It might be. And it does. It might be. Otherwise, do you think the jury is jury nullification? You're a prisoner, so we're going to discount it. No, no, no. Well, how would it might be? I didn't say how they would find, but how that might be something they would consider. It's one conclusion, one possible conclusion. Well, I just want to make sure you didn't say that you suggested a jury would just somehow not even consider. Oh, no. Oh, no. I didn't think so. No. And it does show that they are present, correct? As bystanders, they were present? They were present. And they were looking in the direction and participating, not just when they were carrying him in this awkward position with his head. When I was looking at the video, I was worried that he was going to fall head first because the leverage of his body was forward. So he was doing it, but he got him down. But it shows that they were participating, and even when he was not moving, they were there, right? Well, as I said, Officer Hull was on the right side. Sergeant Brown was originally had his feet behind him and went over to the left side next to Whittaker. But, you know, as far as the evidence goes, all the court had was the affidavits of the officers and the videotape. And the question is, did the inmate raise sufficient facts to take and challenge those affidavits? In addition, there was other witnesses there that also said that they were not aware of Whittaker choking the inmate. So there was a third independent witness that said that. So we have that evidence to consider as well. And, you know, the issue is, did, you know, what evidence do we have that the officers were aware that he was being choked? Okay. They were not, neither one of them were involved in the choking. They were not standing on the sidelines. They were trying to take and bring this inmate who was uncooperative and not maintain the order of the facility. What could they have done? So what could they have done? And I asked myself, so what was the alternative? Could they have pepper sprayed him, tasered him, put him in a restrained chair? What do you do when you're in this situation? The jails, you know, are in a difficult situation when you have an inmate who is in a- What they could have done? Well, how many feet do you think he was from the door of his cell? Well- Just a question. This is just a linear question. How many feet do you think he was from his cell? From the time he sat down? No, from where they had him down on the concrete floor. It's like two or three feet, right? Well, no, that was the pod. I don't know how far the cell was, Judge. You don't have- I thought he was right there near his cell when he started kicking. I thought that was evident. No. Okay. That was the door to the pod. So we don't know how far- I don't know how far his cell was, but that door would lead into- But you said they could have dragged him into his cell from the floor, right? They could have. They could have. They could have dragged him. I mean- On that smooth floor, that wouldn't have been harmful to him either because he would have slid right along, right into his cell. I mean, you teed it up by saying, what else could they do? Well, that's what my- Common sense would have been that. I mean, if three people are like, okay, you're on the floor right now, stay right there. Mm-hmm. Choking is a bad option if they did that. If they did that. Well, picking him up in the air. Wait a minute. Isn't that a bad option if they did that? Would you agree with that? If they did, because we don't know. We don't know that. But if they did that, isn't that a bad option? What? Putting him on the floor? No, choking him. Oh, yeah. Oh, yes. Choking him is not a good option. That's not one that's recommended. We don't recommend choking. We don't know whether he choked him or not. Right, right. We don't recommend choking, Judge. And obviously, that can be a constitutional violation. Under some circumstances, it may not be. But it is not the way we take and we manage inmate populations at the facility. But it's a difficult situation. And so there are several ways to do it. That's cases where the officer dragged the inmate and the inmate filed a claim because he was dragged. So there's, I mean, you have to go hands-on in this circumstance. So the issue is what is the minimum force allowable to take and get the inmate back to his cell? That's the issue we have to deal with. And so these officers did it by making the decision to take and pick him up, although it caused the officer to remember that he threatened to bite the officers if they touched him. So that was also a threat that the inmate made. So they took and they decided to pick him up and bring him down. And because he was kicking and flailing, they had to put him to the ground. I guess if he was not kicking and flailing, they would have continued carrying him to the cell. So that's what the facts show. And so, you know, the trial judge, after viewing the video and the affidavits, concluded that there was no effort in choking. But I still think that the issue is whether there's sufficient evidence of bystander liability. I think that the only evidence before the judge is the affidavits of the officers. And they said that they were not aware of it. And for the videotape, you know, that doesn't, isn't either here nor there. And whether they had an opportunity to stop him from choking him. Well, if they're involved in trying to subdue him, I don't know how they could have stopped choking him as well. So on page 8 and 9 of your brief, you say that his affidavit contains a bunch of inadmissible hearsay. And I'm trying to figure out, you're not arguing that we should discount the entire affidavit based on that. That's just that some of the statements would be inadmissible? Yes, statements from other people, the jail, the police. Because clearly, when he says in his affidavit, I felt them put their arm around my neck. That is not inadmissible hearsay, right? When he says, based on my personal knowledge, this is what happened to me. No, Judge. It is not inadmissible hearsay. The fact is, the fact still remains that he failed to do a statement of disputed facts as required by local rule. And if the court has no other questions, I would ask, respectfully ask the court to affirm the district court's ruling. Thank you, Mr. Rosen. Thank you. Cogville, you have some time reserved. I would make just a few points in rebuttal, your honors. So first, I would start with the video question. And Judge Haytens, you're exactly right that the Scott v. Harris video, the narrow video exception, does not upend the ordinary summary judgment standard. It's a narrow exception for where videos blatantly contradict a plaintiff's account such that there's no genuine dispute. That's not the sort of case that we have here. And second, I would move on to the knowledge points that were discussed at various points. And I agree, Judge Benjamin, that the tapping is certainly the type of evidence a reasonable juror could rely on to conclude that Sergeant Brown had knowledge that M.J. Whitaker's chokehold was excessive. Add on to that Mr. Simmons' testimony that Sergeant Brown asked M.J. Whitaker, what did you do that for? And the fact that the video shows both Officer Hull and Sergeant Brown standing just inches away from Mr. Simmons. Do you think that statement is hearsay? No, your honor, that's not hearsay. I'm inclined not to think so either, but why? That would be the statement of a party opponent, which would be an exception to the hearsay rule. I think it's FRA 801D. I guess I'm also trying to figure out what truth it's asserting in the first place, but fair enough, it's one party opponent as well. And on both the local rules point and the hearsay point, the district court did recognize that there were some hearsay statements in Mr. Simmons' affidavits and that Mr. Simmons' affidavits were not strictly compliant with the local rules. But your honor was exactly correct that the district court did not rely on those points in its analysis. It went on to analyze the choking and say that there was no choking. And so, can I skip to one place that it does strike me whether Whitaker as a party might matter? And it's the statement in the affidavit that Whitaker says, quote, I choked him because his legs were dangling. So if Whitaker is a party, that's admissible as a—well, let me rephrase. If Whitaker is a party, that statement is admissible against Whitaker as a party opponent statement. It's not necessarily admissible against the other defendants as a party opponent statement. And if Whitaker is not a party, that statement strikes me as an admissible hearsay. Do you disagree? I'm not— I don't know what hearsay—I don't—if he's not a party, then he's not a party opponent. And if he's not a party opponent, it doesn't strike me as immediately obvious that any hearsay exception covers that. Your honor, I hadn't thought about that until right this second. Frankly, I'm not listing the hearsay exceptions off the top of my head either. Fair enough. But I don't think we have to get into that to necessarily find that Sergeant Brown and Officer Hull had knowledge. Between the tapping and the video showing their direct proximity over the course of this 48-second choke hold, a reasonable juror could conclude that the officers did have knowledge that there was a violation taking place. And ultimately, the defendant's case depends on taking their word for it and accepting their testimony and drawing inferences in favor of their testimony to conclude that they had no knowledge of any choking. But Rule 56 requires just the opposite. Because a jury making the sort of credibility determinations at issue today could find that M.J. Whitaker choked Mr. Simmons and could find that the officers had knowledge and an opportunity to intervene, we respectfully ask this court to vacate the district court's order and hold that those genuine disputes of material fact going to each element of Mr. Simmons' bystander liability claims preclude summary judgment. Thank you. Thank you very much. Mr. Cogginsville and the professor and other students, we note that you were a court opponent on behalf of the Fourth Circuit. We thank you so much for doing that. And it's a great service to the court. And also I note that Wash U was well represented here, a very historic and fine law school, the oldest law school west of the Mississippi, the gateway to America. All right. And Mr. Rosa, of course, thank you for your able representation as well.
judges: Roger L. Gregory, Toby J. Heytens, DeAndrea Gist Benjamin